COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

| | |
|---|---|
| NICHOLAS J. LOUISA, ESQ.,  ) <br><br> Plaintiff,  ) <br><br> v  ) <br><br> NETFLIX, INC., NETFLIX WORLDWIDE ) <br> ENTERTAINMENT, LLC, JIGSAW ) <br> PRODUCTIONS LLC, MUDDY WATERS ) <br> PRODUCTIONS LLC, ALEX GIBNEY, ) <br> RICHARD PERELLO, STACEY KNOWLES, ) <br> LISA SIEGEL BELANGER, LONNIE ) <br> BRENNAN and the BOSTON BROADSIDE, ) <br><br> Defendants.  ) | Civil Action No. 2081CV01945 |

## MEMORANDUM OF LAW IN SUPPORT OF
## INTERESTED NONPARTY JOHN SAVANOVICH'S *EMERGENCY*
## MOTION TO IMPOUND AND FOR A PROTECTIVE ORDER

### I.    INTRODUCTION

Interested Nonparty John Savanovich ("Mr. Savanovich") hereby makes a limited

appearance[1] for the sole purpose of asking the Court to protect him from certain further harm

relating to events at issue in the Amended Complaint.  Through his Motion, Mr. Savanovich

respectfully asks this Court to extend the protections afforded to him by the Massachusetts

Probate Court for Norfolk County ("Probate Court") by impounding, at least, all documents in

this case that relate to him and, additionally, by issuing his related proposed order.[2]

---

[1] Mr. Savanovich reserves all rights and is not making a general appearance. *See* Mass. R. Civ.
P. 11(b)(3); Uniform Rule of Impoundment Procedure 6(a).

[2] This proposed order is attached as Exh. A to the Affidavit of Attorney Lisa M. Cukier ("Cukier
Aff."), filed herewith.

Mr. Savanovich makes this motion under Rule 2 of the Uniform Rules on Impoundment Procedure ("Uniform Rule 2"), Rule 26(c) of the Massachusetts Rules of Civil Procedure ("Rule 26(c)"), as well as the Court's inherent powers. The reasons supporting this Motion follow:

## II.    BACKGROUND

1.    Mr. Savanovich is a seventy-nine (79) year old man. (Amend. Compl., Exh. Q, attaching Aug. 14, 2020 Order from Probate Court Concerning Zaltman Hearing, the "August Order," at 3.)[3] He lives with disabilities that, as found by the Probate Court, make him an easy target for unscrupulous actors. (*Id.* at 8 and 86.)

2.    Mr. Savanovich has no brothers or sisters, lost his parents, and never married or had children. (*Id.* at 3.) Mr. Savanovich lives under supervision, resides at an assisted living facility, and is under a conservatorship, Case No. NO18P1287PM (the "Conservatorship"), administered before the Probate Court. (*Id.* at 8, 33.)

3.    Virtually all of the information known by the Parties to this action about Mr. Savanovich is subject to three separate protective orders (the "Probate Protective Orders."), in addition to other restrictions. Due to these restrictions, Mr. Savanovich cannot even attach the Probate Protective Orders to this Motion. However, a summary of certain key portions follow.

4.    Among other things, the Probate Protective Orders impound the entire Conservatorship case file, apply (at least) to all parties and counsel, and confirm that the orders, like any other materials in the case record, cannot even be disclosed to others without first seeking the express permission of the Probate Court, in writing. (Cukier Aff., ¶ 8.) The Probate Court has also recognized that all involved attorneys "had and have an ongoing duty to honor

---

[3] On Sept. 1, 2020, Plaintiff Nicholas J. Louisa, Esq. ("Attorney Louisa") filed a motion to substitute Exh. Q with a corrected version.

and adhere to the court impoundment orders which do not permit copying or disseminating of [Mr.] Savanovich's medical and financial information." (August Order at 60.)

5.      Without having provided informed consent, or even being capable of doing so, Mr. Savanovich was surprised to learn that he was the unwitting subject of a Netflix, Inc. ("Netflix") show called "Guardians Inc." (*Id.* at 19, 59-60, 146.) That show first aired as Episode number 5, Season number 2, of "Dirty Money" on March 11, 2020 (the "Episode") and is currently available to the general public on Netflix.[4] (*Id.* at 19.)

6.      The Probate Court found that the Episode's release was "in violation of court orders and much to [Mr. Savanovich's] detriment and dismay and against his interest." (*Id.* at 19; *see also id.* at 146.) The Probate Court ruled that, due to the Episode, Mr. Savanovich's "private attorney-client protected, court-impounded by court rule, sensitive mental and physical health challenges were laid bare, much to his dismay, to not just local print but potentially worldwide consumption." (*Id.* at 146.) The Episode also improperly contains Mr. Savanovich's currently impounded medical and financial information. (*Id.* at 19.)

7.      Mr. Savanovich's purported "participation"[5] in the Episode did not, and could not, waive any claim that the Episode impermissibly contains his privileged[6] and confidentiality information. The Probate Court found that Mr. Savanovich could not legally consent to the disclosure and use of his information:

---

[4] Mr. Savanovich reserves all rights with respect to the Episode and related entities.

[5] During the Episode's production, Mr. Savanovich apparently was in the presence of camera crews, and the like. He may have also noticed cameras when he was being recorded. Regardless, he did not understand what was going on or how the content created would be used.

[6] It is also worth noting that even if a person waves some privileged information, that would not mean that person waived all privileged information. *Transocean Capital, Inc. v. Fortin,* No. CIV.A. 05-0955-BLS2, 2006 WL 3246401, at *5 (Mass. Super. Oct. 20, 2006), citing *Neitlich v. Peterson,* 15 Mass. App. Ct. 622, 625–628 (1983).

3

> As a person deemed incapacitated and in need of protection according to
> Massachusetts law and as established through court proceeding, [Mr.] John
> Savanovich lacked capacity to authorize, if he did, the disclosure of his records,
> their reproduction, representations about them, their print publication or airing on
> video media or otherwise.

(*Id.* at 60; *see also id.* at 146.)  (For similar reasons, Mr. Savanovich's unwitting "participation"

could not, as a matter of law, provide consent for the use of his image, likeness, expression, etc.)

8.      The release and continued availability of the Episode, as well as contemporaneous

publications discussing the same content, has caused Mr. Savanovich mental anguish and

suffering.  It is not just that Mr. Savanovich was violated by the world's consumption of deeply

personal and private details about his life.  Even seemingly well intentioned members of the

public have posted Mr. Savanovich's contact information on the internet and are attempting to

organizing the mailing of a "deluge of cards" with the hope it will "brighten and strengthen his

spirit."  (Cukier Aff., ¶ 7, attaching as Exhibit B a print out of such a website).

9.      While the aforementioned contact is most likely intended to help, these strangers

have no idea how such an outpouring would actually impact Mr. Savanovich.  Worse, not

everyone using Mr. Savanovich's contact information has had good intentions.  Before the airing

of the Episode, a mysterious individual referred to as "Jodi" improperly obtained access to Mr.

Savanovich's personal information and used it to insert herself into his life in an attempt to

control and manipulate him.  (*E.g.*, August Order at 38-40.)  Her interference into Mr.

Savanovich's private affairs was so intrusive she even informed his lawyer, that she entered Mr.

Savanovich's room at his assisted living facility without Mr. Savanovich knowing her true

identity, and for some reason that remains an unknown mystery at this time, she looked within or

searched his dresser drawers.  (*Id.* at 37.)

4

10.     This has become such an issue that the Probate Court has ordered counsel for Mr. Savanovich to change his contact information and counsel is in the process of designing protocols aimed at screening out uninvited public attention. (August Order at 138-139.)

11.     In addition, Mr. Savanovich has also incurred a tremendous amount of legal fees and costs addressing fallout from various breaches of the Probate Protective Orders. The Probate Court found that the involvement of a Party to this action, who alleged to be Mr. Savanovich's counsel, held particular responsibility for the misuse of Mr. Savanovich's information. (*E.g.*, August Order at 60, 149, etc.) The Probate Court invited an assessment of the fees and costs incurred by three separate firms and/or practitioner's offices charged with trying to fix the mess caused by that attorney. (August Order at 139.) The total work performed amounts to over five-hundred thousand dollars ($500,000). (Cukier Aff., ¶ 10.) Unfortunately, that sum reflects a mere portion of the legal fees Mr. Savanovich was forced to incur in connection with the events described in the Amended Complaint. (*Id.*)

12.     The instant case has thrust an unwilling Mr. Savanovich, once more, into the eye of the public. And Mr. Savanovich finds himself, yet again, expending valuable resources trying to protect his private information from further pubic use by the Parties.

## III.     ARGUMENT

### A.     Legal Standards Governing This Motion.

13.     Under Uniform Rule 2(a)(1), an "interested nonparty [(like Mr. Savanovich)] may file a written motion for impoundment of a portion or all of the case record." Mr. Savanovich's request for impoundment must "describe with particularity [1] the material sought to be impounded, [2] the duration for which impoundment is sought, [3] the reasons impoundment is necessary, and [4] the reasons other alternatives to impoundment will not afford adequate protection." *See also* Uniform Rule 6(a) (reciting certain overlapping requirements).

5

14.     To order impoundment, this Court must enter a written finding of "good cause." Uniform Rule 8(a). Under Rule 26(c), this Court may also issue a protective order "which justice requires to protect [Mr. Savanovich] from annoyance, embarrassment, oppression, undue burden or expense" upon a showing of "good cause."

15.     To determine if there is "good cause," the Court should consider all relevant factors, which may include the nature of the parties and controversy, the type of information and privacy interests involved, the extent of community interest, constitutional rights, and the reasons for the request. Uniform Rule 7(b).

### A.     Mr. Savanovich Has Good Cause To Request Impoundment Of The Case Record And Issuance Of A Protective Order.

#### 1.     Mr. Savanovich Seeks To Impound The Case Record.

16.     With respect to Uniform Rule 2(a)(1)'s first requirement of an identification of the materials to be protected, Mr. Savanovich is seeking to impound the case record. Uniform Rule 1(b)(3), defines "case record" as "all or any portion of court papers, documents, exhibits, orders, and other records, including an audio recording or official transcript of a proceeding, that are made, entered, or filed and maintained by the clerk in connection with a transaction of court business." Mr. Savanovich does not, however, seek to conceal the existence of this case and understands it must appear in the court's docket and index. Committee Notes to Rule 1.

17.     If this Court will not impound the record, Mr. Savanovich hopes that the Court will, at least, require the impoundment of any materials referring or relating to Mr. Savanovich or the Conservatorship.[7] As recognized by the Probate Court, such materials must be protected because they contain personal contact information, sensitive medical information, and

---

[7] Regardless of the scope of the impoundment, any Party wishing to use information subject to the Probate Protective Orders must first seek permission from the Probate Court.

6

confidential financial information about Mr. Savanovich. (August Order at 19, 60, & 146.)

Under such a piecemeal approach to confidentiality, however, the Parties would likely reach out

to Mr. Savanovich, with some frequency, to confirm whether various information must be

impounded.

18.     Mr. Savanovich has already spent *over five-hundred thousand dollars ($500,000)*

dealing with just some of the problems caused by the Parties' misuse of his information. It

would be fundamentally unfair to allow Parties who harmed Mr. Savanovich, through misusing

his information, to impose further expense on him so they can make even more unwanted use of

his information. The only way to prevent the undue burden that would result from such a

backwards approach, would be to similarly reverse who is obligated to pay for these expenses.

19.     It is beyond doubt that this Court has the power to protect a nonparty, like Mr.

Savanovich, using just such a fee-shifting approach. *See Medical Source, Inc. v. PerkinElmer*

*Health Sciences, Inc.*, 34 Mass. L. Rptr. 527, 2017 WL 6949769 (Mass. Super. Ct. 2017) (order

party seeking discovery from nonparty to pay for certain undue costs associated with review of

requested information); *c.f.* Mass R. Cit. P. 45(b) (party seeking information from nonparty

"must take reasonable steps to avoid imposing undue burden or expense.").[8]

2.     Mr. Savanovich's Information Should Be Protected Until It Is Destroyed.

20.     Uniform Rule 2(a)(1) requires a party seeking impoundment to identify the

amount of time needed. Mr. Savanovich contends that impoundment should last until those files

can be destroyed. Whether that occurs sooner or later is up to the Parties in this case. Such an

---

[8] Even with fee-shifting, a Party asking Mr. Savanovich to review information and confirm
whether he contends it needs to be impounded should also provide Mr. Savanovich with two (2)
business days to respond in order to prevent addition undue expense and burden.

approach would be similar to the one adopted by the Probate Court, where impoundment lasts until that court says otherwise. (Cukier Aff., ¶ 8.)

21.     If the Court prefers having a date certain, entering an order lasting around 20-30 years would provide considerable protection, and the Court could still lift the order earlier if file can be destroyed. A period of 20 or 30 years in this case is consistent with this Court's approach to impoundment when it wants to protects someone's personal information for the rest of that person's life. *Roman Catholic Bishop of Springfield v. Travelers Cas. & Sur. Co.*, No. 05-0602, 2008 WL 650404, at *2 (Mass. Super. Jan. 7, 2008) (impounding information about victims for fifty (50) years in attempt to protect them for the length of their lives).

>    3.     A Court Has Already Determined That Impoundment Is Necessary, Particularly Given The Parties' Repeated Violations Of Court Orders.

22.     The third and fourth requirements of Uniform Rule 2(a)(1) seek an explanation of why impoundment is necessary and other alternatives are insufficient. The Probate Court already answered both questions by impounding all relevant information—and even recognized that impoundment might not be enough given some of the stunts pulled on Mr. Savanovich.[9]

>    a.     *Mr. Savanovich's Information Is Impounded; Any Parties Using It In This Case Violate Court Orders*

23.     None of the Parties in this case can publicly file Mr. Savanovich's information without first getting permission from the Probate Court. Indeed, it would seem that virtually all information known to the Parties about Mr. Savanovich comes from either *privileged and work-product protected* communications or from the Conservatorship proceeding, itself, where the *entire case record has been impounded.*

---

[9] Mr. Savanovich's privacy rights were so trampled upon that the Probate Court had to actually remove the case file from its standard secure location and place that file in a Judge's chambers.

24.     The Probate Court has also rejected requests for relief from the Probate Protective Orders.[10] (Cukier Aff., ¶ 11.) In so doing, it has specifically declined to release various documents, including court orders, medical reports, briefs, and affidavits that were apparently intended to be used in this action. (*Id.*)

25.     A "legitimate expectation of privacy ordinarily is sufficient to constitute good cause." Committee Notes to Uniform Rule 8, citing *H.S. Gere & Sons, Inc. v. Frey*, 400 Mass. 326, 330 (1987). It is beyond dispute that Mr. Savanovich has a legitimate expectation of privacy with respect to personal information protected by three protective orders as well as by an order denying a Party to this actions' requests to use such information. Indeed, the mere fact that the Probate Court impounded all of Mr. Savanovich's information is sufficient to meet his burden of showing good cause. *See* 49 Mass. Prac., Discovery § 3:22 ("Often, orders of impoundment are needed in order to effectuate a previously issued protective order").

26.     The Probate Court also found that Mr. Savanovich has been victimized due to the unauthorized use of his personal information. (August Order at 3.) If additional personal details about his life become publicly known through this litigation, it is probable that Mr. Savanovich would receive more unwanted contact from strangers. In turn, that contact would cause further mental anguish. The further publication of private information would put him at further risk for being preyed upon by unscrupulous actors like "Jodi." The fact that impoundment is necessary to protect Mr. Savanovich's safety and wellbeing support a finding of good cause. Committee Notes to Uniform Rule 8, citing *New England Internet Café, LLC v. Clerk of the Superior Court*

---

[10] Due to the Probate Protective Orders, Mr. Savanovich cannot file a copy of the relevant emergency motion with this Court. Should this Court want copies of any documents from the Probate Court, Mr. Savanovich can move that court for permission to provide such documents.

30.     If the Parties can simply file whatever information they want about Mr. Savanovich publicly, he will have to spend more resources monitoring the docket to police the use of his information.  When he inevitably locates information that should not be on the public docket, he will have to decide how much justice he can afford and consider if the disclosure is damaging enough that it is worth spending more money to move to impound.  Even then, the damage might already be done.

## IV.     CONCLUSION

For all of the reasons set forth above, Mr. Savanovich respectfully asks this Court to extend the protections afforded to him by the Massachusetts Probate Court by impounding all documents in this case (or at least all those that relate to him) and, additionally, by issuing his proposed order, filed herewith, restricting further unauthorized use of his information.

September 2, 2020                                    Respectfully Submitted,

                                                    **MR. JOHN SAVANOVICH**
                                                    By his attorneys,


                                                    */s/ Lisa M. Cukier, Esq.*
                                                    Lisa M. Cukier, BBO No. 558824
                                                    *lcukier@burnslev.com*
                                                    Eric G. J. Kaviar, BBO No. 670833
                                                    ekaviar@burnslev.com
                                                    Russell J. Smith, BBO No. 688873
                                                    rsmith@burnslev.com
                                                    BURNS & LEVINSON LLP
                                                    125 High Street
                                                    Boston, Massachusetts 02110
                                                    Tel:    617.345.3000
                                                    Fax:    617.345.3299

11