# Exhibit B

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

|  |  |
|---|---|
| NICHOLAS J. LOUISA, ESQ. | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) Civil Action No. 2081CV01945 |
| NETFLIX, INC., NETFLIX WORLDWIDE | ) |
| ENTERTAINMENT, LLC, JIGSAW | ) |
| PRODUCTIONS LLC, MUDDY WATERS | ) |
| PRODUCTIONS LLC, ALEX GIBNEY, | ) |
| RICHARD PERELLO, STACEY OFFMAN, | ) |
| PETER KNOWLES,  SAMANTHA KNOWLES, | ) |
| LISA SIEGEL BELANGER, LONNIE | ) |
| BRENNAN and the BOSTON BROADSIDE, | ) |
|  | ) |
| Defendants. | ) |

## PLAINTIFF NICHOLAS LOUISA, ESQ.'S OPPOSITION TO NONPARTY'S MOTIONS TO INTERVENE AND FOR IMPOUNDMENT AND PROTECTIVE ORDER

### i. Introduction

Plaintiff Nicholas J. Louisa, Esq. ("Plaintiff" or "Attorney Louisa") opposes Nonparty John Savanovich's ("Mr. Savanovich") motions to intervene, for impoundment and a protective order. As a threshold matter, Mr. Savanovich's motions are not properly before this Court where they are nothing more than a (now-untimely) motion to reconsider the carefully tailored orders of the Norfolk County Probate and Family Court ("Probate Court") (Phelan, J.), which *already thoroughly address the issue of what is and is not to be impounded* concerning Mr. Savanovich. Attorney Louisa has scrupulously complied with all such orders in his filings here, and Mr. Savanovich does not argue otherwise.  Simply put, all matters concerning Mr. Savanovich referenced in or attached to Attorney Louisa's *Amended Complaint and Jury Demand* ("Amended

Complaint") are all already **on the public record** in the Probate Court after extensive litigation in

that forum.  Going forward, if there is any need to redact future filings because they contain or

refer to any impounded or otherwise confidential material, that can easily be accomplished via a

routine protective order stipulated to by the litigants.

Mr. Savanovich's motions must also be denied where they are, in any event, without

substantive merit. The broad and prior restraint on future filings which he proposes, with no

specificity whatsoever offered, would run afoul of the First Amendment and the common law, as

well as the Trial Court's Uniform Rules of Impoundment Procedure, which all require Mr.

Savanovich to overcome a "rigorous presumption of openness" with respect to this Court's public

docket; something he fails utterly to do here.  *The Boston Herald, Inc. v. Sharpe*, 432 Mass. 593,

608 (2000).

Attorney Louisa notes that his arguments do not in any way align him with the equally

meritless argument offered by the Netflix Defendants[1] that this matter must not be impounded

because it somehow concerns a matter of public interest.  Indeed, Attorney Louisa is compelled

here – even at the very outset of this case – to respond to the gratuitous and untethered-to-reality

description of this matter set forth in the memorandum in opposition submitted by the Netflix

Defendants.

The underlying "reporting" in this matter did not in any manner concern any legitimate

matter of public interest.  Indeed, the very source materials relied upon by the Netflix Defendants

in their false and defamatory stories about Attorney Louisa were purloined from the then-

impounded file of the Probate Court, as already found by the Probate Court (Phelan, J.) in a 150-

---

[1] The "Netflix Defendants" refers herein, collectively, to Defendants Netflix, Inc., Netflix Worldwide Entertainment, LLC, Jigsaw Productions LLC, Muddy Waters Productions LLC, Alex Gibney, Richard Perello, Stacey Offman and Samantha Knowles.

Case 1:20-cv-11691-FDS   Document 9-2   Filed 09/16/20   Page 4 of 16

page written decision.  *See generally* Docket Entry No. 18 at Ex. A.  As a result, the false and defamatory publications at issue in this case about Attorney Louisa's supposed stealing from Mr. Savanovich did not, as a matter of law, concern any public matter, let alone one of public interest. It is pure folly for the Netflix Defendants to suggest otherwsie.

The Netflix Defendants, of course, are experienced defamation defendants.  Their pleadings are designed to play to their global audience.  With an obvious eye towards that audience, they have taken the occasion of responding to the narrow legal issue raised by Mr. Savanovich concerning the issue of impoundment to try and begin to set a false narrative about this case and Attorney Louisa.  This Court should not countenance such tactics.  As the Second Circuit has recently commented in a defamation case, the insertion of impertinent and irrelevant material in a pleading is highly improper and potentially actionable.[2]  Here, without limitation, the Netflix Defendants include in their memorandum the false and irrelevant claims that (i) the doctor who declared Mr. Savanovich incapacitated had an expired license[3] and (ii) that Attorney Louisa represented Mr. Savanovich in connection with his guardianship.  Both claims are false and known by the Netflix Defendants to be false.  *See* Docket Entry No. 18 at Ex. A.  This Court should disregard them and caution the Netflix Defendants not to engage in such filings going forward.

---

[2] "While common law courts have generally interpreted the litigation privilege broadly, they nevertheless maintain an important (if rarely implemented) limitation on its scope:  to qualify for the privilege, a statement must be *material and pertinent* to the questions involved.  It follows, then, that immaterial and impertinent statements are (at least normally) actionable, particularly when they are so needlessly defamatory as to warrant the inference of express malice."  *Brown v. Maxwell*, 929 F.3d 41, 53 n.47 (2d Cir. 2019) (internal quotations and citations omitted)(emphasis supplied).

[3] Attached hereto as **Exhibit A** is a screenshot of his license status showing that contention is patently false.

- 3 -

## ii. **Background**

Attorney Louisa respectfully refers the Court to the facts set forth in the Amended Complaint and offers here only a brief description of the facts and the relevant procedural background.

**A.    Attorney Louisa's Claims.**

This a defamation action arising from the numerous false and defamatory statements made about Attorney Louisa that were broadcast worldwide by the Netflix Defendants in an episode of their *Dirty Money* series and published in a series of articles by another defendant, The Boston Broadside.  The gist of the false and defamatory statements was to suggest that Attorney Louisa had engaged in wrongdoing, and outright theft, in his representation of his former client, Mr. Savanovich, and the guardianship and conservatorship proceedings for Mr. Savanovich that followed.

The defendants published these statements with "sources" known to them either to lack capacity or to be demonstrably unreliable, and based upon documents improperly taken from the Probate Court, which presided over Mr. Savanovich's guardianship and conservatorship proceedings.  The defendants knew, for example, that Mr. Savanovich had been adjudicated to be an incapacitated person under disability by the Probate Court and suffered from a condition which would render his telling of events immediately unreliable and worse.  Yet, they put him on worldwide television.  Their other source, Defendant Lisa Siegel Belanger ("Ms. Belanger"), was already known by her co-defendants to be a lawyer facing disciplinary proceedings for, among other things, lying about individuals and the judiciary with respect to their alleged corruption in guardianship proceedings.  Simply put, the defendants broadcast a story, ultimately worldwide, featuring and relying upon two known utterly incredible (and worse) sources and unlawfully

obtained materials.  By doing so, the defendants fabricated a story of and concerning Attorney Louisa and destroyed his reputation.

**B.      The Probate Court's Extensive Impoundment Determinations and Attorney Louisa's Compliant Filings in This Case.**

At the outset of its proceedings concerning Mr. Savanovich, the Probate Court entered an impoundment order with respect to the case <u>file</u>.[4]  That order was clarified on two separate occasions and ultimately became a subject of controversy when Ms. Belanger interjected herself into the proceedings claiming to represent the incapacitated Mr. Savanovich.  What followed was substantial litigation over Mr. Savanovich's capacity to retain his own counsel (at the time, Ms. Belanger, and then others) through a so-called *Zaltman* hearing and impounded court records from Mr. Savanovich's proceedings finding their way into the articles in The Boston Broadside and then the episode of Netflix's *Dirty Money* series.[5]

The Probate Court was alerted to these publications of impounded court records.  Attorney Louisa, in particular, asked for relief from the impoundment order to assist in his ability to fully respond publicly to the false and defamatory statements made about him in these publications.

In response to the concerns raised by Attorney Louisa and another, the Probate Court (Phelan, J.) issued temporary orders that it expressly made "NOT IMPOUNDED" dated June 8, 2020.  *See* Amended Complaint at ¶¶ 125-28, Ex. J at p. 7.[6]  In making these temporary orders public, the Probate Court made clear that it was acting in response to the defamation their

---

[4] Despite Mr. Savanovich's suggestion to the contrary in his motions, the impoundment order in the Probate Court is set to expire on January 1, 2025.

[5] To be clear, the legal fees that Mr. Savanovich now complains about having paid – none of which went to Attorney Louisa – flowed directly from him purporting to retain Ms. Belanger and the litigation that ensued from it.

[6] Although attached to the Amended Complaint as well, these public temporary orders are attached hereto as **Exhibit B** for ease of reference.

publication was causing.  *See id*. at Ex. J, pp. 2-3 ("As a result of the appearance via the Internet

to a potentially worldwide audience of 'Netflix' viewers, both the court-appointed conservator . .

. and Attorney Nicholas Louisa have informed the Court that their reputations have been impugned

and defamed and they have received scorn, ridicule and threats from anonymous persons on social

media against which they feel powerless to defend due to the court's impoundment orders. . . .

The Court makes these specific references [in the 'NOT IMPOUNDED' temporary orders] solely

to specifically answer concerns raised in this court by the court-appointed conservator . . . and

Attorney Nicholas Louisa as far as the social media threats of physical violence and vilification

they have received due to the airing of the Netflix 'documentary'.").

With these temporary orders in place, Attorney Louisa then filed this defamation case

against those responsible for the *Dirty Money* episode and the articles, as well as Ms. Belanger, on

August 13, 2020.  Although he scrupulously honored the Probate Court's impoundment order in

his initial *Complaint and Jury Demand* ("Complaint") by attaching and referring solely to publicly

available documents, information and hearings, Attorney Louisa asked this Court for a 30-day

impoundment order to allow the named defendants and Mr. Savanovich an opportunity to argue

otherwise.  This Court (Doolin, J.) immediately entered the impoundment order that was sought,

but for 20 days instead of the requested 30, on the same day as the filing of the Complaint.

The very next day, on August 14, 2020, the Probate Court (Phelan, J.) issued a 150-page

decision on Mr. Savanovich's lack of capacity to retain his own counsel in his proceedings in the

Probate Court after multiple days of evidentiary *Zaltman* hearings.  The decision is a scathing

rebuke of the defendants in this action and the false and defamatory statements about Attorney

Louisa that their publications contain (like the temporary orders of June 8, 2020, referring to the

*Dirty Money* episode as a "documentary" in quotations throughout).  It also makes clear that Ms.

Belanger, in violation of the Probate Court's impoundment order, was the source for the Netflix

Defendants and The Boston Broadside to obtain and publish the impounded court records:

> Attorney Lisa Belanger and/or her associate provided John
> Savanovich's court-impounded documents to the local newspaper
> Boston Broadside and to "Samantha Knowles" an agent or
> employee of purported production company "Muddy Waters"
> and/or "Jigsaw Productions" associated with the airing of the Netflix
> episode.  In so doing, Attorney Lisa Belanger violated the Court's
> impoundment orders, the Uniform Rules on Impoundment
> Procedure number 13, and John's privacy.

Ex. C at p. 61.  Continuing to be cognizant of the impact these publications were having on

Attorney Louisa and his right to be able to respond publicly, the Probate Court identified specific

sections within its 150-page decision that were to remain impounded (*e.g.* Mr. Savanovich's

diagnoses, medical reports, financial information) and expressly ordered the rest be made public:

> **All medical certificates, all medical reports, the GAL Report of
> Attorney Susan Rossi Cook, and inventories shall remain
> IMPOUNDED.**
>
> **The following specific portions of this decision are also
> IMPOUNDED:**
>
> **. . . .**
>
> **Otherwise, this Decision is NOT IMPOUNDED.**
>
> **Except as described above, the base files themselves shall remain
> impounded.**

*Id.* at 139-40 (bold in original).

Fully honoring the redactions required by the Probate Court, Attorney Louisa then filed the

Amended Complaint in this Court, attaching an overly redacted version of the 150-page decision

as its Exhibit Q.  *See* Amended Complaint at ¶¶ 129-31, Ex. Q.  Other than updating the

background section to include this new 150-page decision, the Amended Complaint is the same as

the Complaint.  He asked that it too be covered by the impoundment order issued with respect to the Complaint upon its filing.

Thereafter, Judge Phelan issued the Court's own approved redacted version of his 150-page decision.  In response, Attorney Louisa petitioned this Court to replace his original Exhibit Q with the court-approved, redacted version even though it redacts less than the one that Attorney Louisa had originally filed with the Amended Complaint.[7]  That motion remains pending and is to be heard along with Mr. Savanovich's motions on Friday, September 18, 2020.

Despite the ongoing communication related to Exhibit Q with Attorney Louisa's attorneys, those purporting to represent Mr. Savanovich in this Court[8] did not mention that they intended to seek to intervene, extend the impoundment order in this case or request a protective order.  They did not conference the issue with Attorney Louisa's attorneys pursuant to Superior Court Rule 9C either, despite Attorney Louisa's attorneys having immediately sent them courtesy copies of all filings and having a series of telephone conferences and email exchanges with them since August 13, 2020.

Nor has Mr. Savanovich's counsel petitioned the Probate Court to reconsider its decision on what was to remain impounded and what was to be "NOT IMPOUNDED" in the 150-page

---

[7] Although attached to Attorney Louisa's motion to replace Exhibit Q (Docket Entry No. 18), the redacted version of the Probate Court's 150-page public decision is attached hereto as **Exhibit C** for ease of reference.

[8] It is perhaps overly generous to state that there is a question as to the standing of the attorneys who have purported to file these motions on Mr. Savanovich's behalf.  Their appointments from the Probate Court are only as his court-appointed counsel and co-conservator.  The former would certainly not cover matters outside of the Probate Court such as, for example, attempting to intervene in this Superior Court case.  That latter appointment was self-reported by the Probate Court for appeal as part of the 150-page decision (and has now been appealed by another party as well) and, in any event, requires the co-conservators to act together.  Mr. Savanovich's papers do not even attempt to suggest that those purporting to represent him here are acting on behalf of *both* co-conservators.

decision or, for that matter, the temporary orders of June 8, 2020.  Rather, Mr. Savanovich's present motions appear to ask this Court – a different branch of the Trial Court Department – to reconsider the Probate Court's highly detailed analysis and determinations that followed multiple days of evidentiary hearings.

### iii. Argument

**A.    Attorney Louisa's Claims Are Premised on Public Information.**

Mr. Savanovich has interjected himself into this proceeding to argue that Attorney Louisa should not be permitted to publicly defend his reputation *after Mr. Savanovich, while allowing himself to be used by the defendants in an unconscionable manner, appeared on worldwide television and destroyed it*.  But Attorney Louisa's defense of his reputation – advanced through this civil action – is premised on publicly available information that is not subject to any impoundment from the Probate Court, and Mr. Savanovich has waived any purported privilege by his public attacks on Attorney Louisa.  Thus, there is no basis to impound this case.

The Amended Complaint (and the Complaint before it) is based on public information. After reviewing the *Dirty Money* episode and the articles in The Boston Broadside, the Probate Court (Phelan, J.) issued two written decisions related to Mr. Savanovich's proceedings and expressly made them "NOT IMPOUNDED" in order to aid Attorney Louisa in pursuing these claims.  *See generally* Exs. B, C.

If Mr. Savanovich had an issue with those determinations, he could have sought reconsideration from Judge Phelan and the Probate Court.  He did not do so.  Rather, his motions are nothing but a backdoor attempt to get the Probate Court's decisions reconsidered in a different forum and by a different justice.  That is not how the Trial Court Department works.

Anything in the Amended Complaint that is not found directly in the Probate Court's public decisions is equally a matter of public record.  The defendants' publications that include Mr. Savanovich's statements are out in the public and continue to be published by the defendants.  As are the publicly available documents and information attached and referred to in the Amended Complaint (*e.g.* the receivership court filings, police reports, articles in the local newspaper).  And the Probate Court's initial impoundment of its <u>file</u> never covered public <u>hearings</u> in that court described in the Amended Complaint (or the Complaint) either.

Nor can Mr. Savanovich claim that the attorney-client privilege requires impoundment.  Mr. Savanovich's very public attacks on his former attorney permit Attorney Louisa to defend himself publicly.  As explained by the Appeals Court:

> The purpose of the attorney-client privilege is to preclude an attorney from divulging confidential communications with the client.  S.J.C. Rule 3:07, DR 4-101(C), 382 Mass. 778 (1981).  **The privilege, however, is not absolute and may be waived by the client either expressly or implicitly.  The defendant concedes that if a client assails his attorney's conduct the privilege as to confidential communications is waived because the lawyer has a right to defend himself**.  *See Commonwealth v. Brito*, 390 Mass. 112, 119 (1983). *See also Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974), cert. denied, 419 U.S. 1125 (1975).

*Commonwealth v. Woodberry*, 26 Mass. App. Ct. 636, 637 (1988) (emphasis added).  *See also Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974) ("Surely a client is not free to make various allegations of misconduct and incompetence while the attorney's lips are sealed by invocation of the attorney-client privilege.  Such an incongruous result would be inconsistent with the object and purpose of the attorney-client privilege and a patent perversion of the rule. When a client calls into public question the competence of his attorney, the privilege is waived.").  Of note, Mr. Savanovich has *never* – in the 15 months since the first article was published in The Boston Broadside and six months since the *Dirty Money* episode went live – sought to claw back anything

he now contends is privileged or confidential because of his former attorney-client relationship with Attorney Louisa.

The false and defamatory statements about Attorney Louisa published by the defendants named here remain available to the world at this very moment and are causing ongoing reputational harm to Attorney Louisa, who continues to receive harassment and even death threats as a result of their continued publication.  An equally public adjudication of the falsity of these statements is his only redress.  Defamation plaintiffs, who have had their reputations harmed in very public ways, must be able to rely on the "rigorous presumption of openness" with respect to this Court's docket.  *The Boston Herald, Inc.*, 432 Mass. at 608.  Attorney Louisa does so here to reverse the damage that has been so unfairly done to him in order to knowingly sensationalize a story to fit a preexisting narrative.

**B.    Mr. Savanovich Has Not, and Cannot, Satisfy His Hefty Burden for Impoundment.**

The emptiness of Mr. Savanovich's request to impound this entire case is only reinforced by the applicable law.  It is an insurmountable hurdle that his motions do not overcome.

"Massachusetts has long recognized a common-law right of access to judicial records." *Commonwealth v. Purdue Pharma, Inc.*, 2019 WL 939120, at *2 (Mass. Super. Ct. Jan. 28, 2019) (Sanders, J.) (citing *New England Internet Café, LLC v. Clerk of Superior Court of Criminal Business in Suffolk County,* 462 Mass. 76 (2012) (affirming court decision to lift impoundment of affidavits supporting search warrants)).  "The public right of access is also grounded in the First Amendment."  *Purdue Pharma, Inc.*, *supra*, at *2.  *See Globe Newspaper Co., Inc. v. Clerk of Suffolk County Superior Court*, 2002 WL 202464, at *4 (Mass. Super. Ct. Feb. 4, 2002) (Gants, J.) ("Closing a court record is analogous to closing a courtroom during a trial – both deny the

public a right of access to see what is happening in a judicial case and both restrictions are of a constitutional dimension.").

For these reasons, Massachusetts courts have a "rigorous presumption of openness" with respect to their dockets. *The Boston Herald, Inc.*, 432 Mass. at 608. This presumption "permits the press and the general public to obtain a full understanding of the civil proceeding and therefore allows them to serve as an effective check on the fairness of the judicial system." *Globe Newspaper Co., Inc.*, *supra*, at *2. "The public's interest in access to information and the beneficial effects of publicity may be as strong or stronger in some civil cases than in many criminal cases." *Id*.

This presumption is embodied in the "good cause" standard outlined in Rule 7 of the Uniform Rules of Impoundment Procedure. *See Globe Newspaper Co., Inc.*, *supra*, at *2. "Although this right of access is not absolute, a decision to impound remains the 'exception to the rule,' with the party seeking impoundment (or seeking to continue an existing impoundment order) bearing the burden of demonstrating 'good cause' sufficient to overcoming the general presumption of openness." *Purdue Pharma, Inc.*, *supra*, at *2 (citing *Republican Company v. Appeals Court,* 442 Mass. 218, 223 (2004)).

Here, Mr. Savanovich has failed utterly to satisfy this heavy burden. His broad request to impound "the case record" is a far cry from this Court's obligation to narrowly tailor the scope of any impoundment order under Rule 8(c) of the Trial Court' Uniform Rules of Impoundment Procedure in order to err on the side of public dockets. *See Newspapers of New England, Inc. v. Clerk-Magistrate of Ware Div. of Dist. Ct.*, 403 Mass. 628, 632 (1988). In fact, the request is stunning in light of the two separate "NOT IMPOUNDED" orders from the Probate Court attached to this opposition. *See generally* Exs. B, C.

Mr. Savanovich could have, and should have, conferred with Attorney Louisa (and, apparently, counsel for the Netflix Defendants) about entering into the type of routine stipulated protective order that is regularly allowed in this Court.  He still can.  That is the appropriate means to address any legitimate concerns that Mr. Savanovich may have about information that should remain out of the public eye (*e.g.* Mr. Savanovich's diagnoses, medical reports, financial information) and not a request to impound everything and force the litigants to reimburse Mr. Savanovich for his counsel to review anything that they want to make public.  *Compare* Uniform Rule of Impoundment Procedure 2(a)(1) (requiring party seeking impoundment to sufficiently articulate why "other alternatives to impoundment will not afford adequate protection.").[9]

Accordingly, this Court should deny these motions and extinguish the impoundment order entered in this case.  Attorney Louisa is entitled to a public opportunity to restore his reputation from its public destruction by the defendants through, among others, Mr. Savanovich himself.  If, however, Mr. Savanovich is permitted to intervene, then Attorney Louisa reserves the right to add him as a defendant here, something that he has to date attempted to avoid.

---

[9] Despite his disingenuous claim to the contrary, Mr. Savanovich's latter request – to shift the cost of his attorneys onto the litigants here – has no apparent basis in law.

### iv. <u>Conclusion</u>

For these reasons, Mr. Savanovich's motions to intervene and for impoundment and a protective order should be denied.

Respectfully submitted,

PLAINTIFF NICHOLAS J. LOUISA, ESQ.,

By his attorneys,

_____
Howard M. Cooper (BBO No. 543842)
Matthew S. Furman (BBO No. 679751)
TODD & WELD, LLP
One Federal Street, 27th Floor
Boston, MA 02110
Tel:    (617) 720-2626
Email:  hcooper@toddweld.com
        mfurman@toddweld.com

Dated:  September 16, 2020

## CERTIFICATE OF SERVICE

I, Matthew S. Furman, Esq., hereby certify that, on September 16, 2020, I caused a copy of the foregoing document to be served upon counsel of record or pro se litigants by email and first class mail, postage prepaid, as follows:

Benjamin M. Stern, Esq.
VERRILL DANA, LLP
One Boston Place, Suite 1600
Boston, MA 02108
bstern@verrill-law.com

Richard C. Chambers, Jr., Esq.
CHAMBERS LAW OFFICE
220 Broadway, Suite 404
Lynnfield, MA 01940
richard@chamberslawoffice.com

Rachel Strom, Esq.
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
rachelstrom@dwt.com

Lisa Siegel Belanger, Esq.
BELANGER LAW OFFICE
300 Andover Street, No. 194
Peabody, MA 01960
lisa@belangerlawoffice.com

Lisa M. Cukier, Esq.
Eric G. Kaviar, Esq.
Russell J. Smith, Esq.
BURNS & LEVENSON LLP
125 High Street
Braintree, MA 02110
lcukier@burnslev.com
ekaviar@burnslev.com
rsmith@burnslev.com

Matthew S. Furman